UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE T. KENNEDY a/k/a | ) | |
| TIM DEWAYNE SMITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-1049-JDT-cgc |
| VS. | ) | |
| | ) | |
| DERRICK SCHOFIELD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND,
DENYING MOTION TO PROCEED *IN FORMA PAUPERIS*,
DIRECTING PLAINTIFF TO PAY THE $400 CIVIL FILING FEE,
DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AND
PROHIBITING THE FILING OF FURTHER MOTIONS UNTIL THE FILING FEE IS PAID

On March 7, 2016, Plaintiff Wayne T. Kennedy a/k/a Tim DeWayne Smith ("Kennedy"), who at the time of filing was confined at the Northeast Correctional Complex in Mountain City, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Clerk shall record the Defendants as Former TDOC Commissioner Derrick Schofield; Former West Tennessee State Penitentiary ("WTSP") Warden James Holloway; the State of Tennessee; WTSP Associate Warden T. Markland; WTSP Associate Warden First Name Unknown ("FNU") Fritz; Hardeman County Correctional Facility ("HCCF") Warden Grady Perry; HCCF Associate Warden Charlotte Burns; HCCF Chief of Security Brian Ponds; WTSP Re-Entry Program Manager J. Barrett; WTSP Dr. Jorge Benitez; WTSP Dr. FNU Johnson; WTSP Unit Manager FNU Hughes; HCCF Captain FNU Godwin;

HCCF Captain FNU Jenkins; TDOC Commissioner/Designee Darnel Peterson; HCCF Captain Christopher G. Patton; and HCCF Senior Correctional Officer ("C/O") FNU Prewitt.

Under the PLRA, a prisoner bringing a civil action must pay the full filing fee required by 28 U.S.C. § 1914(a).[1] The statute merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) ("[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. Prisoners are no longer entitled to a waiver of fees and costs."), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

However, not all indigent prisoners are entitled to take advantage of the installment payment provisions of § 1915(b). Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Thus, "[s]uch a litigant cannot use the period payment benefits of § 1915(b). Instead, he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002). The Sixth Circuit has upheld the constitutionality of this provision. *Wilson v. Yaklich*, 148 F.3d 596, 602-06 (6th Cir. 1998).

---

[1] Twenty-eight U.S.C. § 1914(a) requires a civil filing fee of $350. However, pursuant to § 1914(b), "[t]he clerk shall collect from the parties such additional fees . . . as are prescribed by the Judicial Conference of the United States." The Judicial Conference has prescribed an additional administrative fee of $50 for filing any civil case, except for cases seeking habeas corpus and cases in which the plaintiff is granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Because the Court is denying leave to proceed *in forma pauperis* in this case, Plaintiff is liable for the entire $400 fee.

Plaintiff has filed three previous civil rights lawsuits in this district that were dismissed for failure to state a claim or as frivolous.[2] Therefore, Plaintiff may not file any action in this district in which he proceeds *in forma pauperis* unless he demonstrates that he is under imminent danger of serious physical injury. The assessment of whether a prisoner is in imminent danger is made at the time of the filing of the complaint. *See, e.g., Vandiver v. Vasbinder*, 416 F. App'x 560, 561-62 (6th Cir. 2011); *Rittner v. Kinder*, 290 F. App'x 796, 797-98 (6th Cir. 2008); *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312-16 (3d Cir. 2001) (en banc).

Kennedy alleges that on December 16, 2015, he was transferred from HCCF to WTSP, and he informed Defendants Hughes and Taylor about his inability to take a shower due to his confinement in a wheelchair. (ECF No. 1 at 5.) Kennedy also wrote an emergency grievance to the doctor pertaining to the apparent replacement of his medication Roboxin with Neurontin, which he was told that he would need to address with the doctor. (*Id.*) Kennedy alleges that he spoke with Defendant Barret about his medication issue and was assured that he would have the proper medicine. (*Id.*) On December 18, 2015, after speaking with Defendants Markland and Hughes and Case Manager Burnett, who is not a party, about the failure to get his medicine or see a doctor, Kennedy was called to the medical department for an x-ray. (*Id.*) However, Kennedy refused the x-ray because he said it did not affect his core issues or medication; he was then transferred to segregation which, he contends, was in retaliation for requesting the proper medicine and housing. (*Id.*) Kennedy sought treatment again on December 21, 2015, for chest

---

[2] *See Kennedy v. Gilless*, No. 98-2680-JPM (W.D. Tenn. Aug. 28, 1998) (dismissed as frivolous); *Smith v. Shelby County*, No. 98-2679-JT (W.D. Tenn. Aug. 13, 1998) (dismissed as frivolous); and *Kennedy v. Rout*, No. 99-2274-JPM (W.D. Tenn. March 31, 1999) (dismissed as frivolous).

and body muscle spasms, but was told by a nurse that he would not receive treatment until he agreed to an x-ray. (*Id.* at 6.)

Kennedy also alleges that due to the lack of handicap accommodations, he was unable to take a shower from December 16, 2015, the date of his intake, though December 31, 2015, when he was taken to the infirmary to shower in thirty-degree cold water. (*Id.* at 6-7.) Prior to that date, Kennedy spoke at various times with several individuals about the lack of handicap accommodations including unnamed Unit 3A staff members, Case Manager Jones, and Defendants Holloway and Markland. (*Id.* at 6.) Kennedy continued to be unable to shower for days at a time. (*Id.* at 6-7.)

From January 1, 2016, through January 12, 2016, Kennedy was seen by doctors at WTSP where he asked to return to his previous medication, and although Defendant Benitez performed an MRI, as well as had blood work done, Kennedy was told that he would not get to return to his medication until the doctor looked at his x-rays. (*Id.* at 7.)

On January 14, 2016, Kennedy was transferred back to HCCF where he was taken to medical and later placed in segregation because Defendants Prewitt and Patton refused to place him in a handicap accessible cell. (*Id.*) Kennedy alleges that he was denied a shower by Sergeant Smith and Correctional Officer Sharpe. (*Id.* at 8.) He later spoke with Defendant Godwin, who refused to remove his cellmate so that he could have privacy to wash at the sink. (*Id.*) Even though he spoke with several staff members about getting a shower or moving to a handicap cell, Kennedy finally was forced to use the wash pan and his cellmate was moved to another cell by Defendant Ponds. (*Id.*)

On January 19, 2016, Kennedy was escorted to medical by Nurse Practitioner Herr, who told Kennedy the medication he had been deprived of at WTSP would be reordered and would

take two days to arrive. (*Id.*) At that time Kennedy was also promised he would be taken to medical for a shower, but it did not happen. (*Id.*)

Kennedy alleges that after speaking with Defendants Perry, Burns and Ponds on January 20, 2016, he was told that he would be placed in a housing unit with handicap accommodations. (*Id.*) However, the inmate who was already in the cell to which Kennedy was assigned stayed there, and Kennedy was told that Defendant Ponds was going to speak with the inmate about the housing assignment. (*Id.*) Kennedy was told he could "stay out all night until the next day" and would not be placed in lock-up; nevertheless, Kennedy was placed in lock-up during the next shift. (*Id.*) Kennedy was released from lock-up the next day, January 21, 2016, and assigned to another cell; he was told no one else was in the cell and that no one else would be assigned to the cell. (*Id.*) The same day, Kennedy filed a grievance about lost property, a fan. (*Id.*)[3]

Lastly, Kennedy alleges that on January 22, 2016, he turned in a sick call form to be seen for muscular contractions and nerve pain. (*Id.* at 9.)

On June 27, 2016, Kennedy filed a motion to amend and an affidavit in support. (ECF Nos. 8 & 8-1.) In the affidavit, Kennedy asserts supplemental factual allegations against several new Defendants (ECF No. 8-1) and a claim for excessive force concerning an incident that occurred on April 26, 2016 (*id.*; *see also* ECF No. 8-2). The motion to amend is GRANTED. The Clerk shall record the following additional Defendants: TDOC Deputy Commissioner of Operations Jason Woodall; HCCF Assistant Warden of Operations Mr. FNU Akers; HCCF Senior C/O L. Brown; HCCF Lt. B. Smith; HCCF Senior C/O K. Baker; HCCF Chief of Unit Managers Ms. FNU Owens; HCCF Nurse Practitioner O. Herron; HCCF Unit Manager D. Robertson; HCCF Unit Manager Ms. FNU Jones; HCCF Senior C/O R.J. Howell; HCCF Senior

---

[3] Kennedy does not state how his property was lost.

C/O FNU Morrow; HCCF Senior C/O Pirtle; HCCF Captain FNU Lizgame; HCCF Captain FNU Coleman; HCCF Captain FNU Godwin; HCCF Unit Manager FNU Greer; HCCF Health Services Administrator A. Cox; and HCCF Senior C/O K. Howell.

With regard to the claim for excessive force, Kennedy alleges that during a search by the SORT Team on April 26, 2016, his cell door was opened and he was instructed by Defendant Morrow to remove his clothes for a body search. (ECF No. 8-2 at 2.) An unidentified SORT Team Member asked Kennedy if he was paralyzed, and Kennedy responded in the affirmative. (*Id.*) After the body search was completed, Defendant Morrow told Kennedy to go where the other inmates were sitting; however, Kennedy was stopped by Defendant Howell, who asked if Kennedy was paralyzed, to which he again responded that he was. (*Id.* at 3.) Howell told Kennedy to take a seat in the B.O.S.S. Chair,[4] but Kennedy told him that because of his disability and the height of the chair he would not be able to transfer himself from his wheelchair without assistance and repeatedly asked Howell to contact the medical department. (*Id.*) Howell refused and insisted that Kennedy get in the B.O.S.S. Chair or Howell would do it himself. (*Id.*) Howell grabbed Kennedy's wheelchair, pushed it against the BOSS Chair, and attempted to drag Kennedy out of the wheelchair. (*Id.*) Kennedy complained that Howell was causing him pain to his spinal cord, and another SORT Team Member helped Howell handcuff Kennedy. After Kennedy was handcuffed, Howell "decided to spray Kennedy with a chemical agent." (*Id.*) Defendants Morrow and Pirtle and other SORT Team Members did nothing to stop the allegedly unprovoked attack on Kennedy. (*Id.*)

The remainder of the claims are contained in the affidavit accompanying the amended complaint. (ECF No. 8-1.) The Court will summarize these allegations somewhat rather than

---

[4] Neither the affidavit nor the amended complaint contains any explanation of what a "B.O.S.S. Chair" is designed to do.

describing them in detail. Many of the allegations are similar to the claims in the original complaint. Kennedy alleges that on May 11, 2016, he was placed in segregation, in a non-handicap accessible cell. The cell had no handrail beside the toilet to help him transfer from his wheelchair to the toilet, no emergency call button, and a rod bolted at the entrance so that he cannot enter or exit without assistance. Kennedy alleges this is a fire hazard. Kennedy further alleges that he has continued to be denied the opportunity to shower because of the lack of a handicap accessible shower. Kennedy complained often to the various Defendants about these deficiencies. Whenever Kennedy was taken to have a shower, there was no shower seat, so he had to crawl into a regular chair in order to shower, which was very difficult without help from medical staff.

Kennedy further alleges that he complained often to the Defendants that the soap given to inmates in segregation was causing his skin to become very dry and to peel but was refused permission to order soap from the commissary. He turned in several sick call forms concerning his dry and peeling feet. On May 25, 2016, Kennedy was taken to medical, where Defendant Herron allegedly violated his privacy rights by revealing the results of his previous blood test in front of other staff, who then told other inmates that Kennedy had Hepatitis C. Defendant Herron did not examine Kennedy's feet, but the next day the sick call nurse examined them and gave him some ointment.

On June 1, 2016, Kennedy asked that medical be contacted because he was having severe pain in his stomach and liver. He was told that medical could not see him that day, but later in the evening a nurse told him she would check to see when his next chronic care visit was scheduled. Even though Defendant Herron has stated he has Hepatitis C, she has not provided a

treatment plan. Kennedy turned in a sick call request for treatment for the Hepatitis C and to have his chronic care medications re-ordered.

On June 8, 2016, the inmates in segregation were given a memo by Defendant Smith stating that would no longer be allowed to keep soap, towels, t-shirts or extra underwear in their cells, but would only be allowed the socks and underwear they have on and an orange jumpsuit. The inmates would be allowed no soap or toothpaste from the commissary, but would be issued a small tube of toothpaste on Mondays. Kennedy also complains that he has not been allowed access to the library on occasion.

While Kennedy's allegations are numerous, he has "failed to plead facts supporting a finding of imminent danger [of serious physical injury] on the date that he filed his complaint" or his amended complaint. *Taylor v. First Medical Mgmt*, 508 F. App'x 488, 492-93 (6th Cir. 2012). Because this complaint does not come within the exception to 28 U.S.C. § 1915(g), the Court cannot address its merits unless Plaintiff first tenders the civil filing fee. Therefore, the application for leave to proceed *in forma pauperis* is DENIED pursuant to 28 U.S.C. § 1915(g). Plaintiff is ORDERED to remit the entire $400 civil filing fee within thirty (30) days after the date of this order. Failure to do so will result in the assessment of the filing fee from Plaintiff's inmate trust account without regard to the installment procedures and dismissal of this action for failure to prosecute. *Alea*, 286 F.3d at 381-82.

Also on June 27, 2016, Kennedy filed a motion seeking a preliminary injunction and a temporary restraining order directing that he not be retaliated against as well as not be denied sufficient living accommodations or the ability to practice his religious beliefs.[5] (ECF No. 9.) In determining whether to issue a temporary restraining order or preliminary injunction, a district

---
[5] Neither the complaint nor the amended complaint contain any allegations suggesting that Kennedy has been denied the right to practice his religion.

court must consider the following four factors: "(1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury in the absence of a stay, (3) whether granting the stay will cause substantial harm to others, and (4) whether the public interest is best served by granting the stay." *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *see also Ne. Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (same). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion"). In this case, Kennedy has not alleged that the Defendants have retaliated or threatened to retaliate against him; therefore, he has not demonstrated that he will suffer irreparable injury in the absence of an injunction. Accordingly, the motion for a temporary restraining order is DENIED.

Kennedy is PROHIBITED from filing any further motions and documents in this case until the full filing fee of $400 is paid. The Clerk is directed to file no further motions or documents in this case until the entire filing fee is received.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE